**Amy J. ECKENRODE**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 18, 2004.

Decided July 14, 2004.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

Richard Robinson, York, for appellee.

BEFORE: PELLEGRINI, J., COHN, J., and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Commonwealth of Pennsylvania, Department of Transportation (PennDOT), Bureau of Driver Licensing (Bureau) appeals from an order of the Court of Common Pleas of York County (trial court) sustaining the appeal of Amy J. Eckenrode (Licensee) and rescinding the three-month suspension imposed by PennDOT for Licensee's failure to maintain financial responsibility (i.e., insurance coverage) for her vehicle as required by Section 1786 of the Vehicle Code, 75 Pa.C.S. § 1786(a).[1]

On June 8, 2003, Leader Insurance Company (Company) terminated Licensee's motor vehicle liability insurance policy that covered a Honda Coupe, Title No. 46858290, Tag No. DXF0137. As required by Section 1786(e) of the Vehicle Code, 75 Pa.C.S. § 1786(e)[2] and 67 Pa.Code

---

1. That section provides in part as follows:

   (a) **General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.
   75 Pa.C.S. § 1786(a).

2. Subsection (e) provides as follows:

§ 221.3(a),[3] the Company reported the termination of that insurance to the Bureau. On September 16, 2003, the Bureau notified Licensee that the registration of her vehicle was being suspended for three months, effective October 21, 2003, as required by Section 1786(d)(1) of the Vehicle Code, 75 Pa.C.S. § 1786(d)(1).[4] Licensee timely appealed the official notice to the trial court, and a hearing *de novo* was scheduled for February 26, 2004.

At the hearing, Licensee testified that she lives at 379–B West Main Street, Dal-

> **(e) Obligations upon lapse, termination or cancellation of financial responsibility.—**
> (1) An owner of a motor vehicle who ceases to maintain financial responsibility on a registered vehicle shall not operate or permit operation of the vehicle in this Commonwealth until proof of the required financial responsibility has been provided to the Department of Transportation.
> (2) An insurer who has issued a contract of motor vehicle liability insurance, or any approved self-insurance entity, shall notify the department in a timely manner and in a method prescribed by the department's regulations. Upon request of an owner or registrant in the case of an appeal brought by an owner or registrant for suspension under this section, an insurer shall provide a copy of the notice of cancellation or a copy of the insurer's filing procedures with proof that the notice was written in the normal course of business and placed in the normal course of mailing. The department shall not be required to produce such copy or any other proof that notice of termination, lapse or cancellation was provided to the owner or registrant in order to satisfy the burden of proof in a proceeding under this section.
> (3) An insurer who has issued a contract of motor vehicle liability insurance and knows or has reason to believe that the contract is only for the purpose of providing proof of financial responsibility shall notify the department if the insurance has been canceled or terminated by the insured or by the insurer. The insurer shall notify the department not later than ten days following the effective date of the cancellation or termination.
> (4) A person who, after maintaining financial responsibility on the vehicle of another person, ceases to maintain such financial responsibility shall immediately notify the vehicle's owner who shall not operate, or permit operation of, the vehicle in this Commonwealth.
> (5) In the case of a person who leases any motor vehicle from a person engaged in the business of leasing motor vehicles, the lessee shall sign a statement indicating that the required financial responsibility has been provided through the lessor or through the lessee's motor vehicle liability insurance policy coverage. The lessee shall submit the statement to the lessor.
>
> 75 Pa.C.S. § 1786(e).

3. That section provides as follows:

> (a) Notice required. An insurer who has issued a contract of motor vehicle liability insurance and knows or has reason to believe that the contract is for the purpose of providing financial responsibility, shall immediately notify the Department if the insurance has been cancelled or terminated by the insured or by the insurer. The insurer shall notify the Department not later than 10 days following the effective date of the cancellation or termination. This requirement shall not apply to a policy which has been in effect for more than 6 months from the date the policy was initially issued.
>
> 67 Pa.Code § 221.3(a).

4. Subsection (d)(1) provides in part as follows:

> **(d) Suspension of registration and operating privilege.—**
> (1) The Department of Transportation shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the owner or registrant for a period of three months if the department determines that the owner or registrant has operated or permitted the operation of the vehicle without the required financial responsibility. The operating privilege shall not be restored until the restoration fee for operating privilege provided by section 1960 (relating to reinstatement of operating privilege or vehicle registration) is paid.
>
> 75 Pa.C.S. § 1786(d)(1).

lastown, PA. She testified that the Company had been her insurance carrier for roughly one year, and she had an arrangement with the Company to automatically debit the premiums due from her bank account each month. Licensee stated that there were no problems with this method of payment until approximately the second week of June 2003, when she received her bank statement and it indicated that no debit occurred for the month of May. She testified that she contacted the Company immediately to arrange payment for the missed premium, and she was told that she could remit payment on June 30, 2003. When she called the Company on June 30, Licensee testified that she was told by the Company that she had to pay two amounts: one payment for the missed premium and one payment to initiate a new policy, since the old policy had been cancelled by the Company. Licensee testified that she became angry with the Company for canceling her insurance and refused to purchase a new policy. She testified that she immediately called Safe Auto and obtained a new policy with that company. On cross-examination, Licensee testified that she was not aware of the Company's cancellation of her policy until June 30, 2003 when she spoke to the Company on the phone to remit payment for the missed premium in May. She also admitted that as a result, she unknowingly was driving her automobile without insurance coverage from June 8, 2003 until June 30, 2003 (approximately 22 days). In addition, Licensee stated that the premium was not debited from her bank account because of insufficient funds.

In addition to her testimony, Licensee entered two documents into the record, both from the Company. The first document was entitled "Notice of Cancellation, Refusal to Renew or Right to Refusal," dated May 21, 2003, and the second document, dated May 15, 2003, was a notice indicating that electronic funds were not withdrawn from her bank account for the May premium. Both documents were addressed to "379 West Main Street, # 8" instead of 379–B West Main Street. Licensee testified that she did not receive either document and did not see those documents at all until her attorney presented them to her after receiving a letter from PennDOT.

As proof that PennDOT had the authority to suspend Licensee's operating privileges for three months, PennDOT introduced into the record Licensee's certified driving record and the certification of its (PennDOT's) receipt of the notice of termination sent by the Company to PennDOT. No other evidence was offered.

■ Relying on *Department of Transportation, Bureau of Driver Licensing v. Shepley*, 161 Pa.Cmwlth. 314, 636 A.2d 1270 (1994), *overruled by O'Hara v. Department of Transportation, Bureau of Motor Vehicles*, 691 A.2d 1001 (Pa.Cmwlth. 1997), *affirmed*, 551 Pa. 669, 713 A.2d 60 (1998), the trial court sustained Licensee's appeal and rescinded her suspension, reasoning that she mistakenly believed that her premium was automatically debited by the bank; that she did not receive notice of her missed premium payment; and that she took immediate action to correct the error. PennDOT appeals.[5]

PennDOT argues that the trial court erred by sustaining Licensee's appeal when the documents it introduced into evidence, coupled with Licensee's testimony, established that Licensee's insurance coverage had "lapsed," and accordingly, Li-

5. Our review is limited to determining whether the trial court committed an error of law or manifestly abused its discretion in reaching its decision. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655 (1999).

censee's only defense was to challenge the cancellation of her insurance policy before the Pennsylvania Insurance Department. PennDOT argues that the trial court's reliance on *Shepley* was error because that case has been overruled by *O'Hara*,[6] and the cases limiting *O'Hara*[7] have since been superseded by amendments to Sections 1377(b) and 1786 the Vehicle Code.[8]

Section 1786 of the Vehicle Code does not apply, and consequently does not allow PennDOT to suspend the registration on a vehicle or to suspend operating privileges, if a motorist's insurance coverage has been lapsed for less than 31 days and there is proof that the vehicle in question was not operated or allowed to be operated by the owner.[9] In the present case, Licensee was not insured, albeit unknowingly, for a period of only 22 days, but there is evidence that Licensee operated her vehicle during that period although she was unaware that

her carrier had terminated her insurance. Accordingly, the exception does not preclude PennDOT from attempting to suspend Licensee's registration and operating privileges.

A suspension, however, is not automatic. Under Section 1786 of the Vehicle Code, PennDOT has the burden to prove that (1) the vehicle is of a type required to be registered and (2) that PennDOT received notice of cancellation from Licensee's insurance carrier. 75 Pa.C.S. § 1786(d)(3). This burden can be satisfied by certifying that it received documents or electronic transmissions from the insurance company informing PennDOT that the licensee's insurance coverage has been terminated. *Id.* §§ 1377(b)(2). Once PennDOT produces the certified receipt of the notice of cancellation from the carrier, two presumptions arise: (1) a presumption that the cancellation was effective under Sec-

---

**6.** In *O'Hara*, we held that a licensee must challenge the effectiveness of a cancellation of insurance coverage before the Insurance Department, and a failure to do so constitutes a waiver of that issue when challenging a suspension imposed by PennDOT for failure to secure financial responsibility for a motor vehicle.

**7.** *See Cain v. Department of Transportation, Bureau of Motor Vehicles*, 811 A.2d 38 (Pa. Cmwlth.2002), *petition for allowance of appeal denied*, 573 Pa. 673, 821 A.2d 588 (2003); *Beitler v. Department of Transportation, Bureau of Motor Vehicles*, 811 A.2d 30 (Pa. Cmwlth.2002), *petition for allowance of appeal denied*, 576 Pa. 714, 839 A.2d 353 (2003). In those cases, we limited the holding of *O'Hara* by distinguishing between situations where a policy is "cancelled" by the insurer or whether the policy "lapses." In the latter situation, no notice to the insured is required to effectuate the lapse, but in the former, we held that a notice must be sent to the insured before the cancellation could take effect; if not, there is no cancellation to base the suspension upon. In addition, we held that PennDOT had the burden of proving that the notice of cancellation was sent when required.

**8.** After *Cain* and *Beitler* were decided, the General Assembly passed Act 152, which amended Sections 1377 and 1786. The amendment to Section 1377 created a presumption that the cancellation of insurance by the insurance company was effective under the laws of Pennsylvania so long as PennDOT certified that it received a notice of cancellation by the insurance company. 75 Pa. C.S. § 1377(b)(2). The relevant amendments to Section 1786 can be summarized as follows: (1) changing PennDOT's burden of proof to showing that an uninsured vehicle was required to be insured and that it (PennDOT) received notice from the insurance company indicating cancellation; (2) adding the presumption that such notice to PennDOT constitutes a lack of financial responsibility for the vehicle in question; (3) placing the burden of proof on the licensee to rebut the presumption by showing that the vehicle was in fact insured at all relevant times; and (4) requiring all challenges to improper termination of insurance by an insurance company to go before the Insurance Commissioner. *See* 75 Pa.C.S. § 1786.

**9.** There are other exceptions not relevant to this case. *See* 75 Pa.C.S. § 1786(d)(2)(ii), (iii).

tion 1377(b)(2); and (2) a presumption that the vehicle in question lacks the requisite financial responsibility under Section 1786(d)(3)(ii).

Under this framework, PennDOT met its *prima facie* burden of proving that Licensee's vehicle was not insured by submitting Licensee's certified driving record and the notice of suspension submitted by the Company regarding Licensee's insurance coverage. The burden then shifted to Licensee to prove by clear and convincing evidence that the vehicle was insured at all relevant times or, in the case of suspended operating privileges, that the vehicle was insured when it was driven. 75 Pa.C.S. § 1786(d)(3)(ii). By her own admissions, Licensee failed to rebut the presumption that the vehicle in question was uninsured for at least 22 days, even though she had no knowledge that the Company cancelled her insurance.

However, although Licensee failed to rebut the presumption that the vehicle was uninsured, she argues that she rebutted the presumption that the cancellation of her insurance was effective because, although the Company attempted to mail a notice of cancellation to her, the notice was mailed to an incorrect address. Licensee argues that because she did not receive notice from the Company that her policy was cancelled and had no knowledge of cancellation until PennDOT informed her that it was suspending her license, there was no legal cancellation by the Company. While Section 1786(d)(5) of the Vehicle Code requires a licensee to bring any chal-

lenge to the termination of insurance before the Insurance Department, Section 2006 of Article XX of the Insurance Company Law of 1921[10] provides that no cancellation of automobile insurance is effective "unless the insurer mails or delivers to the named insured *at the address shown in the policy* a written notice of the cancellation ..." 40 P.S. § 991.2006 (emphasis added).

■ In this case, it is undisputed that the Company made an error and sent the notice of cancellation to the wrong address. The record is unclear, however, as to whether the address on the insurance policy is in fact the address where the Company mailed the notice of cancellation. If it was, then the cancellation was effective and the suspension was proper. If the address did not match the address shown in the policy, then the Company failed to adhere to Article XX of the Insurance Company Law and, consequently, failed to effectively cancel Licensee's insurance. If the cancellation was ineffective, then PennDOT had no authority to impose a suspension.[11]

Accordingly, we will vacate the trial court's order and remand the matter for a determination of the address on the insurance policy issued by the Company. If it matches the address used to send the notice of cancellation to Licensee, then the cancellation was effective and the suspension was proper. If it does not match the address on the policy, then the cancellation was ineffective under Article XX of the

---

10. Act of May 17, 1921, P.L. 682, *as amended* by the Act of June 17, 1998, P.L. 464, 40 P.S. §§ 991.2001–2013.

11. The licensee need not actually receive the notice to be effective; instead, the insurance company must mail the notice to the address on the policy as it would in the regular course of business. Otherwise, a cancellation could be effectuated no matter what address the

insurance company chose, and a licensee would have the dual burden of facing a cancellation of his or her insurance and a suspension of his or her license without having the security of knowing that, in the event the insurance will be cancelled, it will at the very least be sent to the correct address, whether or not it is actually received or read by the insured.

Insurance Company Law and the suspension was improper.

## *ORDER*

AND NOW, this *14th* day of *July*, 2004, the order of the Court of Common Pleas of York County dated February 26, 2004, at No. 2003–SU–04823–08, is vacated and the matter is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.