**Michael E. PIASECKI**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 9, 2010.

Decided Oct. 25, 2010.

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

No appearance entered on behalf of appellee.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Department of Transportation, Bureau of Driver Licensing (Department), appeals from an order of the Court of Common Pleas of Lackawanna County (trial court), reversing the Department's suspension of Michael E. Piasecki's (Licensee) driver's license. The trial court based its decision on an impermissible collateral attack on the underlying conviction. This, along with the Department's fulfillment of its statutory obligations for a license suspension, would ordinarily result in reversal. But, this case presents a rare instance where the narrow facts lead us to conclude that the decision of the trial court should be vacated, the case remanded, and the matter held in abeyance to give Licensee the opportunity to file an appeal of his underlying conviction *nunc pro tunc* with the trial court.

On May 5, 2009, Licensee was cited for driving with a suspended license. (Reproduced Record (R.R.) at 12a.) A hearing before a magistrate was scheduled for June 30, 2009, at which time Licensee was convicted of driving with a suspended license.[1] (*Id.* at 12a.) Upon receiving notice of Licensee's June 30, 2009 conviction, the Department suspended Licensee's driver's license for one year under Section 1543 of the Vehicle Code.[2] (*Id.* at 12a.) Licensee appealed the Department's suspension of his license to the trial court, arguing that his license had been restored prior to May 5, 2009, thus making the citation for driving with a suspended license on that date, in his opinion, inaccurate.[3] (*Id.* at 13a.)

During a hearing before the trial court, Licensee testified to the circumstances surrounding his attempts to renew his driver's license and his ultimate license suspension. Licensee testified that in December 2007, his bank did not honor a check that he had written to the Department, apparently for his driver's license renewal, despite sufficient funds in his account. (*Id.* at 20a.) At the time, he was unaware that the check had not been honored. (*Id.* at 16a.) As a result of the check not being honored,[4] the Department suspended Licensee's license.[5] Licensee

1. Licensee testified before the trial court that he never received notice of the hearing date, and, thus, was convicted in absentia. (R.R. at 21a.)

2. 75 Pa.C.S. § 1543. Section 1543 of the Vehicle Code provides:

 (a) **Offense defined.**—Except as provided in subsection (b) any person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege has been restored is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $200.

 . . .

 (c) **Suspension or revocation of operating privilege.**—Upon receiving a certified record of the conviction of any person under this section, the department shall suspend or revoke that person's operating privilege as follows:

 (1) If the department's records show that the person was under suspension, recall or cancellation on the date of violation, and had not been restored, the department shall suspend the person's operating privilege for an additional one-year period.

3. In the current case, Licensee did not file a brief to this Court. As such, we rely on the Reproduced Record to establish the basis of his argument.

4. It appears that Licensee's bank was at fault for the check not being honored. (R.R. at 20a–21a.)

5. Although the Department and Licensee represented to the trial court that Licensee was charged with driving on a suspended license, it appears that Licensee's license was initially cancelled, not suspended, as a result of a bad check. (R.R. at 45a). Interestingly, Licen-

later, through an insurance agent friend, learned of the suspension and contacted the Department. Licensee then paid various fees as instructed by the Department in order to restore his license, ultimately receiving a refund for overpayment. (*Id.* at 13a–19a.) Licensee testified that he was told over the phone that his license would be reinstated five days after his payment. (*Id.* at 14a.) Based upon a telephone conversation that he had with a Department representative, Licensee believed that his license had been restored. (*Id.* at 14a.) Thus, following the payment of fees and receipt of a refund, Licensee was under the belief that his license was no longer suspended.

Licensee further testified that on May 5, 2009, he was cited for driving with a suspended license. Licensee testified that he sent in his citation, pleading not guilty. (*Id.* at 15a.) Licensee testified further that he never received notice of a hearing before the magistrate, and, thus, he did not attend the hearing to challenge the citation. (*Id.* at 15a–16a.) Licensee thought that his failure to receive notice of the hearing was the result of the arresting officer writing down Licensee's old address from his license, as opposed to his new address as reflected on his change of address card, which he also had provided to the officer. (*Id.*)

Following issuance of the citation, Licensee received an undated letter from the Department, indicating his license had been restored effective May 15, 2009, ten (10) days after his citation for driving with a suspended license. (*Id.* at 19a–20a.) The Department, thereafter, sent Licensee a notification that his license was again being suspended based on the May 5, 2009 citation and resulting June 30, 2009 conviction, the latter of which Licensee had been unaware.[6] (*Id.* at 17a.)

The trial court found Claimant's testimony to be credible, concluded that the suspension was improper, and sustained Licensee's appeal. Thereafter, the Department appealed to this Court,[7] arguing that the trial court erred in sustaining Licensee's appeal because Licensee did not offer clear and convincing evidence to rebut the Department's proof that he was convicted of violating Section 1543 of the Vehicle Code at a time when his driver's license was canceled pursuant to Section 1572 of the Vehicle Code, 75 Pa.C.S. § 1572.

The Department's burden of proof when it suspends a licensee's operating privilege for one year under Section

---

see's certified driving record reflects that the license was cancelled effected January 18, 2008, with notice mailed December 14, 2007, then subsequently restored without explanation on May 15, 2009 following Licensee's citation on May 5, 2009. (*Id.*) The trial court addressed the matter as if the Licensee's license was initially suspended, as represented to the trial court by the Department and as testified to by Licensee, although the Department represents in its brief that the license was cancelled following the check being dishonored. (R.R. at 12a–25a.) Whether the license initially was suspended or cancelled for purposes of Section 1543 of the Vehicle Code appears to be a distinction without a difference. For the sake of consistency with

the testimony and trial court opinion, we will refer to Licensee's license as having been suspended.

6. Licensee also testified that during at least part of the relevant time period, he was away on active military service. (R.R. at 13a–14a.)

7. This Court's scope of review is "limited to determining whether the findings of fact are supported by competent evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision." *Dep't of Transp., Bureau of Licensing v. Grubb*, 152 Pa.Cmwlth. 178, 618 A.2d 1152, 1153 n. 3 (1992).

1543(c)(1) of the Vehicle Code is to establish that: (1) the Department received a record of conviction for violation of Section 1543(a); and (2) the Department's records show that the licensee was "under suspension, recall or cancellation on the date of violation, and had not been restored." *Orndoff v. Dep't of Transp., Bureau of Driver Licensing,* 654 A.2d 1, 2–3 (Pa. Cmwlth.1994). In an appeal of a license suspension, the only issues reviewed are, first, whether the motorist was in fact convicted, and, second, whether the Department acted in accordance with applicable law. *Ray v. Dep't of Transp.,* 821 A.2d 1275, 1278 (Pa.Cmwlth.2003). The underlying conviction is not reviewable by the trial court or this Court. *Id.* "A licensee may not collaterally attack an underlying criminal conviction in a civil license suspension proceeding." *Commonwealth v. Duffey,* 536 Pa. 436, 443, 639 A.2d 1174, 1177 (1994), *cert. denied,* 513 U.S. 884, 115 S.Ct. 223, 130 L.Ed.2d 149 (1994).

 In order to satisfy its *prima facie* burden of proof, the Department introduced into evidence a document referred to as a "Conviction Detail," showing that Licensee was convicted by a magisterial district judge on June 30, 2009, of violating Section 1543(a) of the Vehicle Code on May 5, 2009 (R.R. at 38a–39a), and Licensee's Certified Driving History (R.R. 43a–47a). Licensee's driving record shows that on May 5, 2009, when Licensee was cited for violating Section 1543(a) of the Vehicle Code, his driver's license had been canceled, effective January 18, 2008, in accordance with Section 1572 of the Vehicle Code. (R.R. at 45a). Licensee's operating privilege was not restored until May 15, 2009, ten days after he was cited. (*Id.*) Once the Department met its *prima facie* burden of proof, the burden then shifted to Licensee to show by "clear and convincing evidence" that the Department's records were incorrect. *Roselle v. Dep't of Transp., Bureau of Driver Licensing,* 865 A.2d 308, 313 (Pa.Cmwlth.2005).

In the case at hand, Licensee did not offer "clear and convincing evidence" to prove that he had not been convicted. Rather, Licensee testified that he was unaware that his driver's license was suspended when he was cited for violating Section 1543(a) of the Vehicle Code on May 5, 2009, because he did not receive notice of a hearing before a magisterial district judge.

In the case at bar, the trial court erred in reversing the license suspension based on this collateral attack on the underlying conviction. The trial court focused solely on the factual premise behind the June 30, 2009, conviction, with particular emphasis on the Licensee's lack of notice of the hearing. (R.R. at 54a–56a.) Nowhere does the trial court address whether the Licensee was, in fact, convicted, or whether the Department acted in accordance with applicable law. Furthermore, the testimony reveals that Licensee never made any claims disputing the underlying conviction or the Department's actions in suspending his license under applicable law. Thus, the trial court's decision was rendered in error. Our review of the matter, however, does not end here.

This case presents a unique and compelling circumstance, and, under these narrow facts, proper resolution of this situation demands more than a simple reversal of the trial court's decision. The Department, in its brief to this Court, suggests that Licensee "might have [had] a viable defense before the magisterial judge who convicted him." (Brief of Respondent at 12.) The Department further suggests that Licensee's lack of notice of the June 30, 2009 hearing may have supported a summary appeal *nunc pro tunc,* because he was active military. (*Id.*)

An appeal *nunc pro tunc* is generally only granted in cases involving fraud, a breakdown in the court's operation, or a breakdown in administrative procedure. *Baum v. Commonwealth*, 949 A.2d 345, 348 (Pa.Cmwlth.2008). In *Webb v. Department of Transportation, Bureau of Motor Vehicles*, 870 A.2d 968 (Pa.Cmwlth.2005), this Court held that the petitioner's lack of notice in the cancellation of his auto insurance policy, which led to a suspension of his vehicle registration, required, in the interest of equity and justice, the opportunity for the petitioner to properly challenge the cancellation despite the passing of the date for a timely appeal. *Id.* at 975.

In *Webb*, the petitioner first received notice of the cancellation of his auto insurance policy in a letter from the Department, which indicated that his vehicle registration was being suspended for lack of insurance. *Id.* at 971. The letter from the Department indicated that the petitioner could appeal his *registration suspension* within thirty days to the Court of Common Pleas in the county of petitioner's residence. *Id.* at 970. At the hearing, the petitioner, acting *pro se*, argued that he had always paid his full premium for auto insurance at the beginning of the policy term. *Id.* He contacted his insurance company because he had received a refund check from the insurance company one day prior to receiving the Department's letter. *Id.* at 970–71. He was surprised to learn that the insurance company cancelled his insurance a few months prior because his insurance agent had failed to raise his rates in conjunction with a speeding ticket that the petitioner had received, and thus, the petitioner had not "properly" paid his full premium, leading to cancellation. *Id.* at 971. The petitioner testified that he never received any notice of the cancellation or increase in rate. *Id.* After learning of the cancellation, the petitioner promptly secured valid insurance. *Id.*

Before the trial court, the Department in *Webb* argued that the petitioner could only contest the suspension of his registration, not the underlying cancellation of his insurance policy. *Id.* The Department argued that challenges to the cancellation of his insurance policy had to be timely appealed to the Insurance Commissioner. *Id.* The trial court concluded that the petitioner had proven by clear and convincing evidence that he had been insured at all times. *Id.* The trial court reasoned that the underlying cancellation of his insurance was illegal because Section 2006 of the Insurance Company Law of 1921[8] required the insurance company to inform Petitioner of the cancelation. *Id.* Thus, the cancellation was void, rendering DOT's registration suspension likewise void. *Id.* The trial court further noted that, due to the lack of notice of cancellation, the petitioner never had an opportunity to appeal to the Insurance Commissioner. *Id.*

On appeal to this Court, we concluded that nothing in the pertinent laws "prevents a trial court from transferring an improvidently filed underlying challenge to an insurer's policy cancellation to the Insurance Commissioner, or from staying a registration suspension appeal pending the resolution of a properly pursued policy cancellation before the Insurance Commissioner if the merits of a case demand such review." *Id.* at 974. Thus, this Court ultimately concluded that,

> [u]nder the narrow facts of the case *sub judice*, it is clear that [the petitioner] intended to challenge the validity of Nationwide's cancellation of his policy, on

---

**8.** Act of May 17, 1921, P.L. 682, added by the Act of June 17, 1998, P.L. 464, 40 P.S. § 991.2006.

the grounds of a lack of proper notice therefor. Notwithstanding Section 1786(d)(5)'s mandate that such a challenge is to be brought with the Insurance Commissioner, we note that [the petitioner], as a *pro se* litigant in this matter, clearly relied upon [the Department's] voluntarily offered procedural guidance in filing his challenge. [The Department's] notice of suspension to [the petitioner] clearly can be read to lead a recipient thereof-especially, as in this case, a recipient who proceeds *pro se*-to believe that his sole available procedural avenue is via appeal of [the Department's] suspension to a trial court. While we acknowledge that [the Department] was under no duty to educate [the petitioner] as to his rights of review under our Commonwealth's laws, we further acknowledge that where [the Department] has unilaterally chosen to give [the petitioner] some procedural advice, it offends any sense of equity for [the Department] to not fully apprise [the petitioner] of such a closely related and clearly relevant parallel procedural path which serves as [the petitioner]'s sole and exclusive avenue to have the merits of his foundational argument heard. Such an equitable view of [the Department's] unilateral offer of incomplete procedural advice-an offer which clearly benefits only [the Department's] apparent goal of obtaining a registration suspension in this matter and one upon which [the petitioner] clearly relied to his detriment-can only be buttressed by the recent changing state of the law in this area, wherein [the petitioner]'s challenge would have been quite properly brought to the trial court prior to the General Assembly's recent amendment. *Id.* at 974–75 (footnotes omitted). Concluding further that the Department would suffer no prejudice in the matter, this Court dismissed the appeal without prejudice and afforded the petitioner the opportunity to request a review of his policy cancellation before the Insurance Commissioner within thirty days. *Id.* at 975.

■ While we recognize that "any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing," *Vann v. Unemployment Comp. Bd. of Review,* 508 Pa. 139, 148, 494 A.2d 1081, 1086 (1985), *Webb* and several similar cases,[9] while dealing with a different section of the law than the case *sub judice,* remind us that due process requirements must, nevertheless, be considered.

■ In the case now before us, Licensee's claim that he never received notice of a hearing before the magistrate for his May 5, 2009 citation for driving with a suspended license is the overriding concern that drives the resolution of this case. "[I]t is too plain for argument that due process requires an express and unequivocal notice in order for a hearing to be meaningful." *See R.P. v. Dep't of Pub. Welfare,* 820 A.2d 882, 888 (Pa.Cmwlth. 2003). Licensee testified that the first notice he received of the hearing before the magistrate was the letter he received indicating that his license had been suspended due to the June 30, 2009, conviction. (R.R. at 22a.) When he went to inquire about his conviction, he was instructed that he had to "go to the Brook's Building and file

---

**9.** *See, e.g., Deklinski v. Dep't of Transp., Bureau of Motor Vehicles,* 938 A.2d 1191 (Pa. Cmwlth.2007); *Dinsmore v. Dep't of Transp., Bureau of Driver Licensing,* 932 A.2d 350 (Pa. Cmwlth.2007); *Fell v. Dep't of Transp., Bu-* *reau of Motor Vehicles,* 925 A.2d 232 (Pa. Cmwlth.2007); *Eckenrode v. Dep't of Transp., Bureau of Driver Licensing,* 853 A.2d 1141 (Pa.Cmwlth.2004), *appeal denied,* 582 Pa. 689, 870 A.2d 324 (2005).

an appeal and do what I did." (*Id.*) It would seem that Licensee filed an appeal to the trial court in an attempt to challenge the underlying conviction for driving with a suspended license, as opposed to appealing the license suspension that resulted from the underlying conviction. We infer this from the fact that the Brook's Building is the home to the Lackawanna County clerk of judicial records office *civil division.* This indicates that Licensee was instructed on how to appeal the *license suspension,* not his *summary conviction.* This is further buttressed by Licensee's Petition for Appeal filed with the trial court, in which Licensee indicates the reason for his appeal as "Driving with License Suspended. I had no clue license was suspended." (R.R. at 3a–4a.) Thus, not only was Licensee not given notice of his hearing before the magistrate, he was subsequently mistaken on how to appeal that conviction.[10]

From the testimony, we further note that the Department does not necessarily have clean hands in this instance. Licensee testified that in his good faith attempts to resolve his license issues, the Department instructed him to pay more than what was due (for which Licensee eventually received a refund) and told him that his license would be reinstated within five days. This shows an administrative breakdown that led to Licensee's citation for driving with a suspended license. Licensee time and again attempted in good faith to comply with the instructions he received, but the Department failed him. Thus, the Department must face some culpability for the resulting state of affairs.

Finally, the original triggering moment for this entire case was Licensee's bank's failure to honor a check that all parties involved believe should have been honored. Licensee testified that he had sufficient funds for payment of the check, and the Department testified that they felt that the bank was at fault for not honoring the check. (R.R. at 20a–21a.) Thus, the error of a third party, who faced no harm in this case, actually set in motion this licensure calamity.

Under the narrow facts of the case *sub judice,* it is clear the Licensee intended to challenge the underlying conviction for driving with a suspended license. Notwithstanding the long-standing notion that Licensee's sole remedy is post-conviction relief from the criminal proceeding, we recognize that Licensee, as a *pro se* litigant, relied on representations from the Department and the Lackawanna County clerk of judicial records. As we similarly noted in *Webb,* while the Department and the Lackawanna County clerk of judicial records is under no obligation to apprise fully Licensee as to his rights of review under the law, where these agencies have unilaterally chosen to give some advice as to Licensee's procedural choices without full appraisal of closely-related parallel paths for appeal, it seems manifestly unjust to now sap Licensee of any opportunity to present his challenge. *See Webb,* 870 A.2d at 975.

Thus, in accordance with the above unique, compelling, and narrow factual situation presented, we find it appropriate to vacate the trial court's order and remand with direction that the trial court hold this license suspension appeal in abeyance and afford Licensee a reasonable period of time to seek permission to appeal the underlying conviction *nunc pro tunc.* If Licensee either fails to pursue or is unsuccessful in pursuing *nunc pro tunc* relief as

---

10. There is nothing to indicate that the Lackawanna County Clerk's office *actually* misinformed Licensee in the manner speculated. Rather, it is possible that Licensee's confusion on how to appeal his conviction was due to his lack of legal training.

to the underlying conviction, the trial court is directed to resolve the instant license appeal in a manner consistent with this Opinion.

Accordingly, the order of the trial court is vacated and this matter is remanded to the trial court for further proceedings.

### ORDER

AND NOW, this 25th day of October, 2010, the order of the Court of Common Pleas of Lackawanna County is hereby VACATED and the matter is REMANDED for further proceedings consistent with this Court's Opinion.

Jurisdiction relinquished.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority vacates the order of the Court of Common Pleas of Lackawanna County (trial court) and remands this case to the trial court, directing that the trial court

> hold this license suspension appeal in abeyance and afford [Michael E. Piasecki] Licensee a reasonable period of time to seek permission to appeal the underlying conviction *nunc pro tunc.* If Licensee either fails to pursue or is unsuccessful in pursuing *nunc pro tunc* relief as to the underlying conviction, the trial court is directed to resolve the instant license [suspension] appeal in a manner consistent with this Opinion.

(Majority op. at 1074–75.) I submit that such a disposition is contrary to well-established case law.

In *Commonwealth v. Duffey,* 536 Pa. 436, 443, 639 A.2d 1174, 1177 (1994) (emphasis added), our supreme court stated:

> We have established that a licensee may not collaterally attack an underlying criminal conviction in a civil license suspension proceeding. In *Commonwealth v. Bursick,* 526 Pa. 6, 584 A.2d 291 (1990), this court held that the **scope of review** of an operating privilege suspen-

sion which resulted from a criminal conviction does not include the authority to attack the validity of the underlying criminal conviction.

Indeed, in *Radice v. Department of Transportation, Bureau of Traffic Safety,* 118 Pa.Cmwlth. 627, 545 A.2d 1005, 1007 (1988) (emphasis in original), this court stated that "the *only* issues in a license suspension appeal are whether the licensee was in fact convicted and whether [the Department of Transportation] DOT has acted in accordance with applicable law." Here, the majority has acted beyond this court's scope of review in considering evidence regarding the circumstances of Licensee's criminal conviction.

Moreover, in *Radice,* the licensee argued that, on equitable grounds, this court should carve out an exception to the rule prohibiting collateral attacks on underlying criminal convictions where the motorist is innocent of the underlying criminal charge. This court held that, "[i]n light of the wealth of case law holding that a licensee may not raise a collateral attack on the underlying criminal conviction in a license suspension appeal, such an argument is **frivolous.**" *Radice,* 545 A.2d at 1008 (emphasis added). This court then awarded DOT reasonable counsel fees for a frivolous appeal under Pa. R.A.P. 2744.

Finally, this court has specifically stated that the only remedy for a licensee who believes that he or she is innocent of underlying criminal charges is to file a *nunc pro tunc* appeal of the underlying criminal conviction. *Radice.* In no case has this court directed a trial court to hold a license suspension in abeyance while the licensee files a *nunc pro tunc* appeal.[1]

Accordingly, I would reverse.

---

1. Although the circumstances in this case might warrant relief, Licensee chose to represent himself, and " 'any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.' " *Vann v. Unemployment Compensation Board of Review*, 508 Pa. 139, 148, 494 A.2d 1081, 1086 (1985) (quoting *Groch v. Unemployment Compensation Board of Review*, 81 Pa.Cmwlth. 26, 472 A.2d 286, 288 (1984)).