**Raymond and Rebecca O'HARA,**
**Appellants,**

v.

**COMMONWEALTH of Pennsylvania,**
**DEPARTMENT OF TRANSPORTA-**
**TION, Bureau of Motor Vehicles.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1997.

Decided March 17, 1997.

---

J. Michael Ruttle, Newtown, for appellants.

Timothy P. Wile, Harrisburg, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

FRIEDMAN, Judge.

Raymond and Rebecca O'Hara (O'Haras) appeal from an order of the Court of Common Pleas of Bucks County (trial court) upholding a three-month vehicle registration suspension imposed by the Pennsylvania Department of Transportation, Bureau of Motor Vehicles (DOT), under section 1786 of the Vehicle Code.[1] We affirm.

---

1. Section 1786 of the Vehicle Code, 75 Pa.C.S. § 1786, states in pertinent part:

**(d) Suspension of registration and operating privilege.**—[DOT] shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter.... This subsection shall not apply in the following circumstances:

(1) The owner or registrant proves to the satisfaction of [DOT] that the lapse in financial responsibility coverage was for a period of less than 31 days and that the owner or registrant did not operate or permit the operation of the vehicle during the period of lapse in financial responsibility.

....

**(g) Defenses.—**

....

(2) No person shall be penalized for maintaining a registered motor vehicle without financial responsibility under subsection (d) if, at the time insurance coverage terminated or financial responsibility lapsed, the registration plate and card were voluntarily surrendered to [DOT]....

The O'Haras had insured their vehicles for more than fifteen years with Allstate Insurance Company (Allstate). During that time, Allstate billed them on a quarterly basis for their premium payment. The O'Haras made every premium payment and never experienced a lapse in coverage. In June 1995, however, Allstate failed to send the regular quarterly premium bill to the O'Haras for payment. Absent the customary bill, the O'Haras did not realize that the premium was due. Thus, the O'Haras were "lulled into inattention" by Allstate and, as to the nonpayment of their premium, were not at fault in any way. (Trial court op. at 2–3.)

Subsequently, DOT sent a notice to the O'Haras suspending their vehicle registration for three months with respect to one of their two Dodge station wagons; the notice stated that Allstate had terminated their insurance coverage for that vehicle as of July 3, 1995. The following day, DOT issued a similar notice pertaining to the O'Haras' second Dodge station wagon. The O'Haras challenged both suspensions in a single appeal to the trial court.

The trial court first decided that the O'Haras could not take a single appeal from the separate motor vehicle registration suspensions. Relying on *Brogan v. Department of Transportation, Bureau of Driver Licensing,* 164 Pa.Cmwlth. 559, 643 A.2d 1126 (1994), the trial court stated that it quashed the appeal with respect to one of the vehicles. With respect to the merits of the appeal on the remaining vehicle, the trial court expressed sympathy for the O'Haras but concluded that, under *Stone v. Department of Transportation, Bureau of Driver Licensing,* 166 Pa.Cmwlth. 643, 647 A.2d 287 (1994), it must reject their appeal.

On appeal to this court,[2] the O'Haras argue that their Allstate insurance policy was never lawfully cancelled, and that the trial court erred in relying on *Stone* instead of *Department of Transportation, Bureau of*

*Driver Licensing v. Shepley,* 161 Pa.Cmwlth. 314, 636 A.2d 1270 (1994). We disagree.

■ Initially, we point out that the O'Haras' argument regarding the legality of Allstate's termination of their insurance coverage is a collateral attack on the propriety of the cancellation. In *Department of Transportation, Bureau of Driver Licensing v. Riley,* 150 Pa.Cmwlth. 259, 615 A.2d 905 (1992), *overruled on other grounds,* 154 Pa. Cmwlth. 118, 623 A.2d 369 (1993), we held that a collateral attack upon the cancellation of insurance is beyond our scope of review. We stated:

> Sections 8, 9 and 10 of the Insurance Act, Act of June 5, 1968, P.L. 140, as amended, 40 P.S. §§ 1008.8, 1008.9 and 1008.10, provide a method by which an insured, who may have been illegally cancelled or refused renewal of an insurance policy, can obtain a review of the insurer's actions. This is the *exclusive remedy* to challenge an alleged violation of the Commonwealth's insurance laws and *a vehicle owner may not collaterally challenge such a cancellation in the context of an appeal from an operation or registration privilege suspension imposed by DOT.*

*Riley,* 615 A.2d at 909 (emphasis added).

However, in *Shepley,* contrary to *Riley,* we turned to *Federal Kemper Insurance Co. v. Insurance Department,* 509 Pa. 1, 500 A.2d 796 (1985), and addressed "the question of what constitutes an effective cancellation of insurance coverage under Pennsylvania Law." *Shepley,* 636 A.2d at 1273. We noted that, under *Federal Kemper Insurance,* a *knowing* refusal to pay premiums constitutes an effective cancellation; however, an *unknowing* failure to pay premiums does *not* constitute an effective cancellation. We held that, because the insured in *Shepley* did not knowingly refuse to pay premiums, the insurer improperly cancelled the insurance policy; thus, DOT could not properly impose a suspension.

2. Our scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court made an error of law or committed an abuse of discretion in coming to a deci-sion. *Department of Transportation, Bureau of Driver Licensing v. Marpoe,* 157 Pa.Cmwlth. 603, 630 A.2d 561 (1993), *appeal denied,* 536 Pa. 648, 639 A.2d 34 (1994).

Later, in *Stone*, ignoring *Shepley*, we upheld a suspension imposed by DOT where the insured, through no fault of his own, was unaware that his automobile coverage had lapsed. We stated:

> While we ... have sympathy for [the insured's] predicament, we agree with [the trial court] that the [Vehicle] Code is clear. [DOT] is required to suspend the operating privilege of the owner or registrant of a vehicle, when [DOT] determines that that person has operated the vehicle without insurance. *There is no requirement that [DOT] establish that the person was at fault*.... *Neither is [DOT] required to prove that the owner or registrant actually received notice of an imminent lapse of insurance.*

*Stone*, 647 A.2d at 288 (emphasis added).

■ Faced with the apparent inconsistency of our decisions in this area, we now reconsider *Riley*, *Shepley* and *Stone* and expressly overrule *Shepley*. As in *Riley*, we recognize that, where an insured believes that an insurer has improperly terminated insurance coverage, the insured has an exclusive remedy to challenge the cancellation under the Insurance Act. If the insured does *not* challenge the termination of insurance, the insured has waived that issue. However, if the insured makes the challenge and prevails against the insurer, DOT may not suspend the insured's vehicle registration.[3] Because the O'Haras did not challenge Allstate's cancellation of their insurance under the Insurance Act, the O'Haras cannot raise that issue now; thus, the O'Haras' first argument must fail.[4]

■ The O'Haras also argue that, although the trial court clearly intended to grant DOT's motion to quash the O'Haras'

appeal as to their other vehicle, there was no order granting the motion; thus, the trial court did not actually quash the appeal. However, we believe that the trial court effectively quashed the appeal by specifically stating as much in the opinion that accompanied its May 23, 1996 order, which is the subject of our review.[5]

■ The O'Haras next contend that the trial court abused its discretion in quashing the appeal with regard to one of the vehicles, asserting that the trial court gave no reason for its choice of which vehicle to omit. The O'Haras claim that such a result is arbitrary, inequitable and draconian and cite the dissenting opinion in *Brogan* to support their position.[6] We reject the O'Haras' argument and follow the majority holding in *Brogan*:

> [A] party may not file a single statutory appeal from multiple suspension notices relating to separate vehicle registrations. We further conclude that the trial court did not err in requiring [the registrant] to file separate statutory appeals from the two suspension notices and in quashing [the registrant's] appeal relating to the registration suspension of [one of the vehicles].

*Brogan*, 643 A.2d at 1128.

Accordingly, we affirm.

COLINS, President Judge, dissenting.

I respectfully dissent to the majority's conclusion that *Department of Transportation, Bureau of Driver Licensing v. Shepley*, 161 Pa.Cmwlth. 314, 636 A.2d 1270 (1994) should be overruled. I believe that we correctly held in *Shepley* that when an insured "did not manifest his [or her] intention to cancel his [or her] insurance with an overt act, ... the cancellation of [the] coverage was not

---

3. During argument before this court, DOT explained that, where the insured motorist challenges the cancellation of insurance under the Insurance Act, DOT will stay its suspension pending the outcome of that challenge. We believe that this is the proper course of action and encourage DOT to promulgate a regulation to that effect.

4. Like the trial court, we are sympathetic to the O'Haras; however, the burdensome effect of section 1786 of the Vehicle Code on licensees in this

Commonwealth is a matter for the Legislature to resolve.

5. We note that, even if the trial court did not properly quash the O'Haras' appeal with respect to their other vehicle, the O'Haras would not have prevailed on the merits of their appeal.

6. The dissent in *Brogan* would allow a single appeal from multiple suspension orders where the vehicles are titled in the same owner and insured by the same policy.

proper." *Id.* 636 A.2d at 1274. Without that overt act, DOT cannot prove that a proper cancellation caused the lapse in coverage. Here, the O'Haras did not receive their quarterly insurance bill; its absence "lulled [them] into inattention." They committed no overt acts manifesting their intention to cancel their policy, and the cancellation, of which they received no notice, was improper. Consequently, the three-month suspension of their vehicle registration was also improper.

I believe that neither *Department of Transportation, Bureau of Driver Licensing v. Riley,* 150 Pa.Cmwlth. 259, 615 A.2d 905 (1992), *overruled on other grounds,* 154 Pa. Cmwlth. 118, 623 A.2d 369 (1993), nor *Stone v. Department of Transportation, Bureau of Driver Licensing,* 166 Pa.Cmwlth. 643, 647 A.2d 287 (1994), control this case. In *Riley,* the insured received notice that her premium was due and she paid less than the full amount after the due date. More importantly, she *knew* of the cancellation of her insurance coverage, a fact that distinguishes this case and *Shepley* from *Riley.* *Stone* involved an operating privilege suspension and is neither directly applicable nor dispositive of this case.

Accordingly, I would reverse the trial court's order insofar as it upheld the three-month suspension of the O'Haras vehicle registration, because I believe that this case is controlled by *Shepley,* which should not be overruled.

SMITH and KELLEY, JJ., join in this dissenting opinion.