**Patrick R. CAIN and Amy D. Cain,**

**v.**

**COMMONWEALTH** of Pennsylvania **DEPARTMENT OF TRANSPORTATION, Bureau of Motor Vehicles, Appellant.**

**Patrick R. Cain,**

**v.**

**Commonwealth of Pennsylvania Department of Transportation, Bureau of Motor Vehicles, Appellant.**

**Amy D. Cain,**

**v.**

**Commonwealth of Pennsylvania Department of Transportation, Bureau of Motor Vehicles, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted May 8, 2002.

Decided Sept. 25, 2002.

Timothy P. Wile, Asst. Counsel In–Charge and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

No appearance entered on behalf of appellees.

BEFORE: McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, SIMPSON, Judge and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Department of Transportation, Bureau · of Motor Vehicles (DOT) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that sustained the appeals of Patrick and Amy Cain (Cains) from DOT's suspension of the registrations of their Acura coupe, Chevrolet truck and Honda sedan. We vacate and remand.

On January 30, 2001, DOT notified the Cains that the registrations on their motor vehicles were being suspended for three months, effective March 6, 2001, under authority of Section 1786(d) of the Vehicle Code, 75 Pa.C.S. § 1786(d).[1] Specifically, DOT's suspension was based upon a notice it received from Liberty Mutual Fire Insurance Company (Liberty Mutual) that the Cains had been without automobile insurance for more than 31 days. When the Cains received the notice of suspension from DOT, they filed statutory appeals with the trial court.

At the hearing before the trial court, DOT produced several documents. They included DOT's notice to the Cains of their vehicle registration suspensions, the electronic communication received by DOT from Liberty Mutual that the Cains' policy terminated on October 29, 2000, and a copy of DOT's registration records for the three vehicles.

In response, Amy Cain appeared *pro se* at the hearing and testified on her own behalf and for her husband, Patrick. Mrs. Cain testified that she was unaware that their vehicles were not insured until December 15, 2000, when she received "my very first notice from [DOT] that I did not have coverage."[2] R.R. 34a. She testified that she immediately called Liberty Mutual to advise the company of her November 19, 2000 payment; she was informed in that telephone conversation that Liberty Mutual was "holding" the check because "the time had lapsed." *Id.* She was also informed that her insurance had been cancelled as of October 29, 2000 for nonpay-

1. Section 1786 provides, in pertinent part, as follows:

 (a) **General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

 . . .

 (d) **Suspension of registration and operating privilege.**—The Department of Transportation shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the owner or registrant for a period of three months if the department determines that the owner or registrant has operated or permitted the operation of the vehicle without the required financial responsibility. The operating privilege shall not be restored until the restoration fee for operating privilege provided by section 1960 (relating to reinstatement of operating privilege or vehicle registration) is paid.

 Whenever the department revokes or suspends the registration of any vehicle under this chapter, the department shall not restore the registration until the vehicle owner furnishes proof of financial responsibility in a manner determined by the department and submits an application for registration to the department, accompanied by the fee for restoration of registration provided by section 1960. This subsection shall not apply in the following circumstances:

 (1) The owner or registrant proves to the satisfaction of the department that the lapse in financial responsibility coverage was for a period of less than 31 days and that the owner or registrant did not operate or permit the operation of the vehicle during the period of lapse in financial responsibility.
 75 Pa.C.S. § 1786.

2. It is assumed that the notice Mrs. Cain referred to was a financial responsibility inquiry letter sent by DOT to the Cains. The fact that the Cains did not answer DOT's financial responsibility inquiry letter is of no consequence in this appeal.

ment of premium. She testified that she never received any notice of cancellation from Liberty Mutual and that she secured insurance for the three vehicles from a different insurance carrier on December 15, 2000, the same day that she received notice from DOT. The trial court sustained the Cains' appeal after determining that they "did all that they were required to do" and that they "were without fault" because the carrier "left the Defendants without notice of the cancellation." R.R. 43a. This appeal followed.

■ The issue before us is whether DOT established a lapse in the Cains' financial responsibility coverage as required for a registration suspension under 75 Pa. C.S. § 1786(d).[3] DOT claims that it did and that the trial court erred in sustaining the appeal of the Cains. DOT asserts that if the Cains did not receive an advance notice of termination of coverage from Liberty Mutual, their only recourse was to seek redress from the Insurance Department. We disagree.

■ A vehicle's registration may be suspended for three months where DOT can demonstrate that a policy of financial

responsibility on a registered vehicle has lapsed and the registrant has not obtained new coverage within 31 days of the lapse.[4] *O'Hara v. Com., Department of Transportation, Bureau of Motor Vehicles*, 691 A.2d 1001 (Pa.Cmwlth.1997), *affirmed per curiam*, 551 Pa. 669, 713 A.2d 60 (1998). In *O'Hara*, this Court overruled its prior decision in *Department of Transportation, Bureau of Driver Licensing v. Shepley*, 161 Pa.Cmwlth. 314, 636 A.2d 1270 (1994)[5] because it appeared to be inconsistent with its holding in *Stone v. Department of Transportation, Bureau of Driver Licensing*, 166 Pa.Cmwlth. 643, 647 A.2d 287 (1994).[6] The two holdings, however, are not inconsistent because *Shepley* arose from a policy cancellation, and *Stone* arose from a policy lapse. In a lapse, a policy expires by its own terms; a cancellation is a termination of a policy prior to its expiration. The regulatory implications for each are different. COUCH ON INSURANCE § 30:1 (3d. ed.1995). *O'Hara* and *Stone* apply to the factual circumstance of a policy lapse, but they do not apply to the factual circumstance of a policy cancellation, which is the case here.[7]

3. Our standard of review is whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655 (1999); *Department of Transportation, Bureau of Driver Licensing v. Scott*, 546 Pa. 241, 684 A.2d 539 (1996).

4. It is also required that during the period of lapse the registrant not operate the vehicle. 75 Pa.C.S. § 1786(d)(1). The record was silent on the issue of operation; it is not relevant because DOT asserts that Registrant's lapse exceeded 31 days.

5. In *Shepley*, 636 A.2d at 1274, this Court held that an unknowing failure to pay an insurance premium will not support a suspension of a motor vehicle registration. An in-

surer cannot effect a cancellation unless it has given the insured prior written notice of the impending cancellation. In the absence of a legally effective insurance cancellation, DOT cannot suspend a motor vehicle registration for failure to satisfy the Vehicle Code's financial responsibility requirements. 75 Pa.C.S. § 1786(d).

6. In *Stone*, 647 A.2d at 288, this Court upheld a motor vehicle suspension where the insured was unaware of his automobile coverage lapse. This Court held that there is no requirement that DOT prove that the owner actually received notice of an imminent lapse of coverage.

7. See our companion opinion, *Beitler v. Department of Transportation, Bureau of Motor Vehicles*, 811 A.2d 30, (Pa.Cmwlth.2002).

Pennsylvania statute regulates the conduct of insurers in their cancellation of automobile insurance policies and in their underwriting decisions to refuse to write policies or to refuse to renew policies. Article XX of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended* by the Act of June 17, 1998, P.L. 464, 40 P.S. §§ 991.2001–2013 (Article XX).[8] It establishes the grounds for a lawful non-renewal or cancellation of an automobile insurance policy as well as the mechanism for carrying out this decision. Article XX provides, *inter alia*, that a policy cancellation cannot be effected without prior notice. It states:

> A *cancellation* or *refusal to renew* by an insurer of a policy of automobile insurance *shall not be effective unless the insurer delivers or mails to the named insured* at the address shown in the policy a written notice of the cancellation or refusal to renew.

Section 2006 of Article XX, 40 P.S. § 991.2006 (emphasis added). By contrast, Article XX exempts from its terms the policy lapse; it provides:

> (c) Nothing in this article shall apply:
>
> *(1) If the insurer has manifested its willingness to renew* by issuing or offering to issue a renewal policy, certificate or other evidence of renewal or has manifested such intention *by any other means.*

Section 2002(c)(1) of Article XX, 40 P.S. § 991.2002(c)(1) (emphasis added). The common "means" for the insurer to manifest this willingness is to send a premium invoice along with a new declarations page. If a policyholder chooses not to pay the renewal premium, then the policy will lapse on its own accord. There is no obligation upon the insurer to send a notice of lapse. *Id.*

The scope of Article XX is determined by its definitional section. The statute does not define "renewal" by what is actually stated on the face of the policy. It states:

> [A]ny policy with a policy period or term of less than twelve (12) months or any period with no fixed expiration date shall *for the purpose of this article* be considered as if written for successive policy periods or terms of twelve (12) months.

Section 2001 of Article XX, 40 P.S. § 991.2001 (emphasis added). Accordingly, a termination of a policy before the twelve-month anniversary date is a cancellation, and this is true even if the policy states a coverage period of six months.[9] Thus, if a policyholder does not pay a premium invoice sent to "renew" a contractual six-month policy, he is entitled to a notice of cancellation. Indeed, a notice must be issued *or the cancellation will not be effected.* Section 2006 of Article XX, 40 P.S. § 991.2006.

**8.** The 1998 enactment replaced an earlier statute popularly known as "Act 78." Act of June 5, 1968, P.L. 140, 40 P.S. §§ 1008.1–1008.11. The provisions of the repealed Act 78 are similar to those in Article XX and, therefore, many cases arising under Act 78 continue to have precedential effect. The Insurance Department adopted a cancellation and non-renewal regulation at 31 Pa.Code Chapter 61 under authority of Act 78 but it has not adopted a similar regulation under Article XX. Accordingly, Chapter 61 of the Pennsylvania Code no longer has the force and effect of law. Cases interpreting Chapter 61 no longer have precedential effect unless they also relate to statutory provisions of Act 78 that are now found in Article XX. *Federal Kemper Insurance Co. v. Insurance Department*, 509 Pa. 1, 500 A.2d 796 (1984), for example, construed Act 78 and 31 Pa.Code § 61.10(b) to develop its "knowing nonpayment" standard.

**9.** The coverage period stated in the policy still has significance. It allows the insurer to implement any rate increases that have been approved without having to wait for the 12 month anniversary date.

■ To summarize, a cancellation or non-renewal is not effective unless the insurer provides advance written notice of its intent to effect a cancellation or non-renewal. On the other hand, where the insurer sends a premium invoice to effect a renewal of coverage at the twelve-month anniversary date, the insurer does not have a duty to give any notice of the policy lapse if the policyholder does not pay the premium.

■ In no case is it necessary to show that the required notice of cancellation or non-renewal was actually received by the policyholder, only that it has been sent. Further, a copy of the actual notice of cancellation does not need to be produced to prove that it was sent. "Proof of the office [of the insurer's] filing procedures with proof that the notice was written in the normal course of business and was placed in the normal course of mailing is sufficient to show receipt of the item." *Donegal Mutual Insurance Co. v. Insurance Department*, 694 A.2d 391 (Pa. Cmwlth.1997).

■ In registration suspension cases, it has long been held that challenges to the insurer's action must be presented to the Insurance Department. *See, e.g, Department of Transportation, Bureau of Driver Licensing v. Riley*, 150 Pa.Cmwlth. 259, 615 A.2d 905 (1992). It is true that only the Insurance Department can order remedial action or impose sanctions if the insurer violates the statute. However, Article XX does not require Insurance Department intervention to prevent the occurrence of a cancellation where the insurer has not sent the requisite notice. By operation of law, *i.e.,* Article XX, a cancellation does not occur absent the required notice.[10] In the absence of a cancellation being effected, there is nothing to appeal to the Insurance Department.

■ This has significance in registration suspension cases. DOT may not suspend a vehicle's registration for lack of financial responsibility unless it can prove coverage has not been in effect for at least 31 days. 75 Pa.C.S. § 1786.[11] If the insurer has not sent the required notice of non-renewal or cancellation, coverage did not terminate, and there is no factual or legal basis for a suspension of registration.

In *Riley* this Court stated that "[i]n order to sustain its burden of proof, DOT must establish: (1) that the vehicle in question is of a type required to be registered in the Commonwealth; and (2) *that the required automobile liability insurance had been cancelled* or otherwise terminated." *Id.* at 907 (emphasis added). To sustain its burden of proof, DOT must establish the policy period and whether it terminated on the twelve-month anniversary date or at mid-policy. Next, it must show that in a termination for nonpayment of premium, a notice of cancellation was *sent,* if required. In the absence of such notice, a cancellation is not effected and the predicate act for suspending a registration has not occurred.[12] In light of the

---

10. It has long been the law of Pennsylvania that where a notice of cancellation is required by statute or by the policy itself, the insurer's failure to follow the requirement results in the continuation of coverage. *Royal Indemnity Co. v. Adams,* 309 Pa.Super. 233, 455 A.2d 135 (1983).

11. See footnote 1 for text of 75 Pa.C.S. § 1786.

12. Simply relying on the insurer's statement that coverage has terminated is insufficient. The insurer's statement is untrue if it has not sent the required notice of cancellation. An untrue statement cannot trump in a registration suspension hearing.

procedures set forth in *Donegal,* this evidentiary burden is not significant.

DOT asserts that the burden was on the Cains to appeal Liberty Mutual's cancellation of their policy to the Insurance Department.[13] This is an unrealistic burden where, as here, the policyholders assert they never received a notice of cancellation from Liberty Mutual. Article XX required Liberty Mutual to give the Cains advance written notice of their impending cancellation and also of their right to file a complaint with the Insurance Department. Absent this notice, the Cains had no notion that something happened to their coverage, let alone where or how to challenge Liberty Mutual's action. This is what is intended by Article XX.

 Statutes are to be construed *in pari materia.* Reading Article XX against the requirements of the Vehicle Code means that DOT must prove that an insurance policy cancellation has been effected. DOT does not meet its burden of proving that the vehicle owner was without insurance coverage for 31 days until it proves that the insurer sent a notice of cancellation or non-renewal. DOT did not attempt to make this showing in the hearing before the trial court.

DOT's reliance on *O'Hara* here is misplaced because its holding applies to the factual circumstance of an automobile insurance policy lapse on the twelve-month anniversary date. Here, we are presented with a purported mid-term policy cancellation. DOT did not establish that Liberty Mutual effected a cancellation of the Cains' coverage by sending the notice required by Article XX. If Liberty Mutual failed to send a cancellation notice, then it failed to effect a termination of the Cains' coverage.

If so, then the trial court's holding must be affirmed because the Cains' vehicles were not without coverage for 31 days.

Because the record is incomplete on these key facts, we vacate the trial court's order and remand for further proceedings consistent with our opinion.

### ORDER

AND NOW, this 25th day of September, 2002, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby vacated and the case remanded for further proceedings consistent with the attached opinion.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the motor vehicle owner in a vehicle registration suspension appeal may collaterally attack the underlying cancellation of insurance coverage and that, in such cases, the Department of Transportation, Bureau of Driver Licensing (DOT) has the burden of proving that the owner received proper notice of the cancellation. Although I would like to agree with the result reached by the majority, I must dissent because I believe that the result is inconsistent with the law as enacted by the legislature.

Section 1786(e)(3) of the Vehicle Code states that an insurer shall notify DOT if motor vehicle liability insurance has been "canceled or terminated by the insured or by the insurer." 75 Pa.C.S. § 1786(e)(3). Here, the insurance company notified DOT

---

13. DOT argues that to sustain the trial court will effect a "collateral attack" on the Insurance Department. This may have been true if the Cains sought the Insurance Department's review of Liberty Mutual's action. There has been no order issued by the Insurance Department; therefore, there is nothing to attack collaterally.

that the insurance was canceled or terminated by either the insured or the insurer.[1]

Section 1786(c) of the Vehicle Code states that, upon registering a motor vehicle, the owner "shall be deemed to have given consent to *produce proof,* upon request, to [DOT] ... that the vehicle registrant has the financial responsibility required...." 75 Pa.C.S. § 1786(c) (emphasis added). Here, DOT presented evidence showing that, prior to the registration suspension, DOT requested proof of the required financial responsibility.

Section 1786(d) of the Vehicle Code authorizes DOT to suspend the registration of a motor vehicle for three months if DOT determines that the vehicle owner failed to secure the required financial responsibility. 75 Pa.C.S. § 1786(d). Here, when the motor vehicle owner failed to produce proof of the required financial responsibility, DOT suspended the registration. Although DOT fulfilled its obligations under the law, the owner filed an appeal.

In *O'Hara v. Department of Transportation,* 691 A.2d 1001 (Pa.Cmwlth.1997), this court held that, when appealing a vehicle registration suspension, a vehicle owner *cannot* collaterally attack the cancellation or termination of insurance coverage. We explicitly stated that DOT is *not* required to prove that the owner was at fault or that the owner actually received notice of the imminent lapse in insurance coverage. *Id.* at 1004 (quoting *Stone v. Department of Transportation, Bureau of Driver Licensing,* 166 Pa.Cmwlth. 643, 647 A.2d 287, 288 (1994)). Nevertheless, the owner in this case challenged the cancellation of the insurance coverage, specifically asserting that there was no notice.[2]

Clearly, under the Vehicle Code and *O'Hara,* DOT must prevail here. However, because I see great injustice in allowing DOT to suspend a motor vehicle registration despite alleged insurance company errors, I would hope that the legislature would review the existing law and remove the inequities from it.

Judge PELLEGRINI joins in this dissent.

---

1. The majority states that the insurer's notice to DOT is not sufficient to make a prima facie case that a vehicle owner's insurance coverage has been canceled or terminated; in support of this statement, the majority suggests that the insurer's statement might be untrue. (Majority op. at 43 n. 11.) However, I see no reason for DOT to assume in every case that the notice is untrue or that the vehicle owner will raise the notice's veracity as an issue in a statutory appeal. *If* the owner were to raise such an issue, it would constitute a collateral attack on the underlying cancellation or termination.

In that regard, I note that the majority frames the issue in this case as whether DOT established a lapse in the registrant's insurance coverage. (Majority op. at 41.) However, I believe the issue in this case is whether, in a vehicle registration suspension appeal, the vehicle owner may collaterally attack the underlying cancellation or termination of insurance coverage. As indicated below, our court has addressed this issue clearly in *O'Hara v. Department of Transportation,* 691 A.2d 1001 (Pa.Cmwlth.1997).

2. The majority states that this court's holding in *O'Hara* is limited to cases involving a lapse that occurs at the expiration of a twelve-month insurance policy. (Majority op. at 44.) However, the *O'Hara* case did not involve a lapse that occurred at the expiration of a twelve-month insurance policy. In *O'Hara,* the insurer cancelled the policy for nonpayment of premiums; when the insurer did not send a normal quarterly premium bill, the owner neglected to pay the premium.