**Claudette Denise PARNELL**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 28, 2014.

Decided May 8, 2014.

---

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

Brett J. Riegel, Stroudsburg, for appellee.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

Appellant Department of Transportation, Bureau of Driver Licensing (DOT), appeals from an order of the Court of Common Pleas of Monroe County (trial court). The trial court sustained the statutory appeal of Claudette Denise Parnell (Licensee) from DOT's three-month suspension of her operating privileges based upon her conviction for operating a motor vehicle without the financial responsibility required by law, which is a summary offense under Section 1786(f) of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL").[1] *See* 75 Pa.C.S. § 1786(d)(1) (authorizing DOT to suspend vehicle operating privileges for three months where owner operates vehicle without required financial responsibility). We now vacate and remand for further proceedings.

Licensee was driving her vehicle on December 23, 2012, when she was involved in an accident. In the course of investigating the accident, the police learned that Licensee's insurance had lapsed on December 22, 2012, and issued a summary citation under Section 1786(f) of the MVFRL, to which Licensee pled guilty on February 25, 2012. (Reproduced Record (R.R.) 64a, 66a.) By letter dated March 5, 2013, DOT notified Licensee that her driving privileges would be suspended effective April 9, 2013, due to her traffic offense on December 23, 2012. (R.R. 61a–63a.) On or

---

1. 75 Pa.C.S. §§ 1701–1799.7.

about March 6, 2013, Licensee filed a *pro se* appeal of the suspension notice with the trial court. (R.R. 5a–24a.)

Licensee subsequently obtained counsel and, through counsel, filed an Amended License Suspension Appeal on April 13, 2013, which, *inter alia,* incorporated Licensee's *pro se* filing by reference. (Certified Record (C.R.) No. 10.) The trial court initially scheduled a *de novo* hearing on the appeal for May 16, 2013. Licensee, however, filed a Motion for Continuance. (*Id.* No. 12.) In that motion, Licensee contended that her counsel filed a complaint with the Pennsylvania Insurance Department (Insurance Department), challenging the cancellation of Licensee's insurance policy.[2] Licensee requested that the license suspension matter be continued until the Insurance Department ruled on the complaint. The trial court granted the motion and continued the hearing until August 22, 2013.

On June 13, 2013, the Insurance Commissioner, by one of his investigators, issued its Investigative Report on his review of the cancellation of Licensee's automobile insurance policy for nonpayment of premium. (R.R. 70a.) The Investigative Report identifies the notice of cancellation date as December 5, 2012, with an effective date of December 22, 2012 (Cancellation Notice), copy of which was attached to the Investigative Report. The body of the Investigative Report provides, in relevant part:

> The Insurance Department has concluded its review of the company's cancellation of your automobile policy.
>
> Subsequent to the company's mailing of the notice of cancellation, your premium

was received and accepted by the company. The cancellation notice has been rescinded and coverage will remain in force.

> **The company reports that they received your payment of $291.52 on December 24, 2012 which was used to reinstate your policy with a lapse in coverage from December 22, 2012 to December 24, 2012.**
>
> Thank you for the opportunity to assist you in resolving this matter.

(R.R. 70a (emphasis in original).) Under Act 68, either the insurer, in this case Nationwide, or Licensee had the right to dispute the findings in the Investigative Report by requesting a formal hearing. Section 2009(d) of Act 68, 40 P.S. § 991.2009(d). Licensee does not dispute that she did not seek any further review of the matter before the Insurance Department.

Instead, Licensee proceeded before the trial court, which held the continued hearing on August 22, 2013. DOT offered and the trial court admitted into the record Commonwealth Exhibit No. 1 (or C–1), which included: (1) DOT's official notice of suspension; (2) the record of Licensee's conviction for driving her vehicle without insurance, which DOT received through electronic transmission from the Administrative Office of Pennsylvania Courts; (3) the traffic citation upon which the conviction was based; and (4) Licensee's driving record. The Commonwealth then rested its case.

In response, Licensee testified that she lives in Penn Estates in East Stroudsburg, PA, and commutes to New York every day

---

2. Automobile insurance policy issuance, renewal, refusal, and cancellation in Pennsylvania are regulated under Article XX of the Insurance Company Law of 1921, Act of May 17, 1921, P.L., added by the Act of June 17, 1998, P.L. 464, 40 P.S. §§ 991.2001–.2013.

This law is commonly known as "Act 68." Section 2008 of Act 68, 40 P.S. § 991.2008, provides that an insured may request that the Pennsylvania Insurance Commissioner (Insurance Commissioner) review a decision by an insurer to cancel a policy.

for work. Licensee testified that on December 22, 2012, she believed that she was current on her automobile insurance payments. She testified about the accident on December 23, 2012. She noted that she only learned that her policy had been cancelled for nonpayment of premium after she notified her insurance company of the accident. She contended that the insurer, without notice to her, changed the due date of the prior month's premium payment from the 27th to the 22nd of the month. When payment was due, Licensee testified that she would normally call the insurer and make payment over the telephone. Licensee testified that after filing her appeal of the license suspension with the trial court, she pursued relief from the Insurance Department. She reiterated that she had no idea on the date of the accident that her automobile insurance had lapsed. She testified that she did not receive notice from her insurer of a possible cancellation.

Licensee also testified regarding her payment history with her automobile insurer, as reflected on Petitioner's Exhibit No. 2. In response to a question about the reference to a notice of cancellation dated December 5, 2012, in the Investigative Report, Licensee testified that she never received the attached Cancellation Notice from her insurer. The trial court, thereafter, asked Licensee questions about Petitioner's Exhibit No. 2, the payment history printout on Licensee's account with her insurer.

After the submission of all evidence, the trial court ruled in favor of Licensee from the bench. DOT appealed, and the trial court ordered DOT to file a concise statement of the errors complained of on appeal. In its concise statement, DOT contended that it satisfied its prima facie burden in the license suspension appeal by offering as evidence proof of Licensee's conviction for violating 75 Pa.C.S. § 1786(f). DOT further contended that Licensee failed to prove by clear and convincing evidence that her vehicle was insured at the time of her offense. (*Id.* 86a–88a.) The trial court thereafter filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

With respect to the Investigative Report, the trial court noted that although the Insurance Department found a two-day lapse in coverage, the Insurance Department did not address in the letter the question of whether the cancellation was valid. The trial court also concluded that DOT satisfied its prima facie case. The trial court then looked to 75 Pa.C.S. § 1786(d)(4), which provides, in relevant part:

The court's scope of review in an appeal from an operating privilege suspension shall be limited to determining whether:

(i) the vehicle was registered or of a type required to be registered under this title; and

(ii) the owner or registrant operated or permitted the operation of the same vehicle when it was not covered by financial responsibility. The fact that an owner, registrant or operator of the motor vehicle failed to provide competent evidence of insurance or the fact that the department received notice of a lapse, termination or cancellation of insurance for the vehicle shall create a presumption that the vehicle lacked the requisite financial responsibility. *This presumption may be overcome by producing clear and convincing evidence that the vehicle was insured at the time that it was driven.*

(Emphasis added.) The trial court held that pursuant to this section, Licensee proved by clear and convincing evidence

that she was insured on December 23, 2012.

The trial court observed that an insurer must strictly comply with statutory requirements to cancel an insurance policy, including the requirement to provide notice of the cancellation to the insured. *See Nationwide Ins. Co. v. Pa. Ins. Dep't*, 779 A.2d 14 (Pa.Cmwlth.2001) (holding, in appeal from Insurance Commissioner adjudication, that notice of cancellation must strictly comply with requirements of Act 68). The trial court observed that the Cancellation Notice has a street mailing address of "503 Penn Est," but Licensee lived at "503 Penn *Estates*." Noting that Licensee denied receiving the Cancellation Notice, the trial court theorized, that due to the difference in the mailing address, the Cancellation Notice "may not have been directed to [Licensee] as a result." (1925(a) Opinion at 842–43.) "The lack of notice to Licensee, by failing to mail to her proper address, makes the cancellation invalid. As such, Licensee should have had coverage on December 23, 2012." (*Id.*) The trial court also found Licensee credible and determined that she "always made payments upon receipt of a bill" and "could not afford to be uninsured as she commutes every day to work in New York City." (*Id.*)

■■■ On appeal,[3] DOT raises the following issues: (1) whether DOT satisfied its prima facie burden of proof for a three-month suspension under Section 1786(d) of the MVFRL by submitting Licensee's driving record, including her record of conviction; and (2) whether the trial court exceeded the scope of its review in this

matter by examining and ruling upon the validity of the underlying policy cancellation in this case. As to the first question, there is no dispute that DOT met its prima facie burden. To support its suspension decision under Section 1786(d) of the MVFRL, DOT had the burden to prove: (1) Licensee's vehicle was of a type that was required to be registered; (2) financial responsibility was not secured or maintained; and (3) Licensee operated the vehicle, or permitted the vehicle to be operated, during a period when the vehicle was not covered by financial responsibility. *Pangallo v. Dep't of Transp., Bureau of Driver Licensing*, 65 A.3d 1091, 1093 (Pa. Cmwlth.2013). DOT's submission of its certified packet, which included Licensee's conviction on the summary offense for operating a vehicle without insurance, satisfied this prima facie burden. 75 Pa.C.S. § 1377(b)(1); *Cangemi v. Dep't of Transp., Bureau of Driver Licensing*, 8 A.3d 393, 397 (Pa.Cmwlth.2010) (en banc). Moreover, DOT bears no burden to demonstrate that the licensee acted negligently in failing to maintain insurance or that the licensee had a culpable mental state in driving without insurance. *Stone v. Dep't of Transp., Bureau of Driver Licensing*, 166 Pa.Cmwlth. 643, 647 A.2d 287, 288 (1994).

DOT next contends that the trial court exceeded its scope of review and erred as a matter of law in finding and concluding that Nationwide mailed the cancellation notice to the wrong address and, therefore, failed to comply with Act 68's requirements for cancellation.[4] DOT contends

---

**3.** This Court's standard of review of a trial court's order sustaining an appeal from a license suspension under Section 1786(d) of the MVFRL is limited to considering whether the trial court erred as a matter of law or manifestly abused its discretion. *Todd v.*

*Dep't of Transp., Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655 (1999).

**4.** Section 2006 of Act 68, 40 P.S. § 991.2006, requires that a notice of cancellation, to be effective, must be delivered or mailed to the

that Licensee challenged the cancellation of her automobile policy under Act 68 by seeking review of the cancellation by the Insurance Commissioner pursuant to Section 2008 of Act 68. Pursuant to Section 2009 of Act 68, the Insurance Commissioner, through one of his investigators, conducted a review of the cancellation and concluded that Licensee's policy was not in effect on the date of the accident on December 23, 2012, due to a lapse in coverage. Licensee did not seek a hearing to challenge this determination, as was her right under Section 2009(d) of Act 68. DOT thus contends that the Investigative Report's findings are final and may not be collaterally attacked in this license suspension proceeding. Nonetheless, DOT asks this Court to remand this matter to the trial court, so the trial court can compare the address contained on Licensee's insurance policy to the address contained on Nationwide's Cancellation Notice, citing this Court's decision in *Eckenrode v. Commonwealth, Department of Transportation, Bureau of Driver Licensing*, 853 A.2d 1141 (Pa.Cmwlth.2004), *appeal denied*, 582 Pa. 689, 870 A.2d 324 (Pa.2005).

Our precedent in this area is less than pellucid. We thus will take this opportunity to clarify our precedent. The trial court relied on two opinions to support its authority for examining whether Nationwide properly cancelled Licensee's insurance policy under the notice requirement of Act 68. The first was *Cain v. Department of Transportation, Bureau of Motor Vehicles*, 811 A.2d 38 (Pa.Cmwlth.) (en banc), *appeal denied*, 573 Pa. 679, 822 A.2d 705 (2002). There, DOT notified Patrick and Amy Cain (Cains) that it had received notification from their automobile insurer that their policy had been cancelled. Because the Cains lacked insurance on their vehicles for more than 31 days, DOT notified

named insured at the address shown on the

the Cains that it was suspending the vehicle registrations pursuant to the MVFRL. The Cains appealed the suspension. They contended that they never received proper notice of cancellation from their automobile insurer, but that as soon as they became aware, they secured new insurance on the vehicles. The trial court ruled in their favor, concluding that the carrier did not provide the Cains proper notice of cancellation.

On appeal, this Court vacated and remanded. We held that the trial court improperly looked to whether the Cains *received* notice of cancellation, as the only requirement is that notice be properly sent. *Cain*, 811 A.2d at 43. Nonetheless, we held that the trial court could sustain a suspension appeal if the insurer failed to comply with the cancellation notice requirements in Act 68. We reasoned:

> In registration suspension cases, it has long been held that challenges to the insurer's action must be presented to the Insurance Department. It is true that only the Insurance Department can order remedial action or impose sanctions if the insurer violates the statute. However, [Act 68] does not require Insurance Department intervention to prevent the occurrence of a cancellation where the insurer has not sent the requisite notice. By operation of law, *i.e.,* [Act 68], a cancellation does not occur absent the required notice. In the absence of a cancellation being effected, there is nothing to appeal to the Insurance Department.
>
> . . .
>
> Statutes are to be construed *in pari materia*. Reading [Act 68] against the requirements of the Vehicle Code means that DOT must prove that an insurance policy cancellation has been effected. DOT does not meet its burden of prov-

policy.

ing that the vehicle owner was without insurance coverage for 31 days until it proves that the insurer sent a notice of cancellation or non-renewal. DOT did not attempt to make this showing in the hearing before the trial court.

*Id.* at 43–44 (citations and footnotes omitted). This Court vacated and remanded to provide DOT with the opportunity to supplement the record with proof that the insurer sent notice of the cancellation to the Cains. *Id.* at 44.

The problem with the trial court's reliance on *Cain* is that, as we have since noted,[5] *Cain* has been superceded by statute. Specifically, within a few months of our decision in *Cain,* the General Assembly passed Act 152,[6] which amended, *inter alia,* Section 1786(d) of the MVFRL to include the following subsection:

> An alleged lapse, cancellation or termination of a policy of insurance by an insurer may only be challenged by requesting review by the Insurance Commissioner pursuant to Article XX of the act of May 17, 1921 (P.L. 682, No. 284), known as The Insurance Company Law of 1921. Proof that a timely request has been made to the Insurance Commissioner for such a review shall act as a supersedeas, staying the suspension of registration or operating privileges under this section pending a determination pursuant to section 2009(a) of the Insurance Company Law of 1921 or, in the event further review at a hearing is requested by either party, a final order pursuant to section 2009(i) of the Insurance Company Law of 1921.

75 Pa.C.S. § 1786(d)(5).

The trial court, however, also cites *Eckenrode,* a post-Act 152 opinion from this

Court. In *Eckenrode,* we acknowledged the passage of Act 152, but nonetheless concluded that a licensee could prevail in a license suspension appeal if the licensee can show errors in the notice of cancellation from the insurer that would render the cancellation ineffective as a matter of law under Act 68. In so holding, we specifically relied on the following language now found in Section 1786(d)(4)(ii) of the MVFRL, relating to the creation of a rebuttable presumption:

> The fact that an owner, registrant or operator of the motor vehicle failed to provide competent evidence of insurance or the fact that the department received notice of a lapse, termination or cancellation of insurance for the vehicle shall create a presumption that the vehicle lacked the requisite financial responsibility. This presumption may be overcome by producing clear and convincing evidence that the vehicle was insured at the time that it was driven.

(Emphasis added.) This language creates a presumption of lack of financial responsibility in two instances: (1) where the licensee fails to provide evidence of insurance; or (2) where DOT receives notice from an insurer of a lapse, termination, or cancellation of insurance. With respect to the latter, we also cited to Section 1377(b)(2) of the Vehicle Code, 75 Pa.C.S. § 1377(b)(2), which provides:

> In a proceeding relating to the suspension of the registration of a motor vehicle imposed under section 1786 (relating to required financial responsibility), the department's certification of its

---

5. *See Choff v. Dep't of Transp., Bureau of Motor Vehicles,* 861 A.2d 442, 447 (Pa. Cmwlth.2004); *Webb v. Dep't of Transp., Bureau of Motor Vehicles,* 870 A.2d 968, 972 (Pa.Cmwlth.2005).

6. Act of December 9, 2002, P.L. 1278.

receipt of documents or electronic transmission from an insurance company informing the department that the person's coverage has lapsed, been canceled or terminated shall also constitute prima facie proof that the lapse, cancellation or termination of the policy of insurance described in the electronic transmission was effective under the laws of this Commonwealth.

This subsection was also added to the Vehicle Code by way of Act 152.

We applied the above statutory provisions in *Eckenrode,* where DOT attempted to suspend Amy Eckenrode's (Eckenrode) driver's license after it received notice from Eckenrode's insurer that the insurer had cancelled Eckenrode's policy.[7] DOT submitted that notice to the trial court, satisfying DOT's prima facie case by creating what this Court described in *Eckenrode* as two statutory presumptions: (1) a presumption under Section 1377(b)(2) of the Vehicle Code that the cancellation was effective; and (2) a presumption under Section 1786(d)(4)(ii) of the MVFRL that the vehicle in question lacked the requisite financial responsibility. *Eckenrode,* 853 A.2d at 1144–45. Notwithstanding the language in Section 1786(d)(5), added by Act 152, which requires any challenge to an "alleged" cancellation to proceed before the Insurance Department pursuant to Act 68, this Court held in *Eckenrode* that a licensee challenging a license suspension could rebut the *first* statutory presumption of an "effective" cancellation by showing that the insurer failed to mail or deliver notice of cancellation to the licensee at the address stated on the policy, as required in Section 2006 of Act 68. In that event, the cancellation, pursuant to Section 2006 of

Act 68, was "not … effective," and the licensee would overcome the statutory presumption under Section 1377(b)(2) of the Vehicle Code of an "effective" cancellation, thereby rebutting DOT's prima facie case. We vacated and remanded to the trial court with instruction that the trial court compare the address of the insured on the insurance policy and the address of the insured on the insurer's cancellation notice. If they matched, we held that the cancellation would be effective and the suspension by DOT would be proper. If they did not match, we held that the cancellation would be ineffective under Act 68 and that the resulting DOT suspension would be improper. *Eckenrode,* 853 A.2d at 1145–46.

Months after the Court decided *Eckenrode,* we issued our opinion in *Choff. Choff* was a vehicle registration suspension case based on notification by an insurer to DOT that it had terminated a policy insuring the vehicles of Phillip and Colleen Choff (Choffs). In their statutory appeal of the suspension, the Choffs contended that they did not receive notice from their insurer of the cancellation of their insurance. The Choffs had made this same argument in challenging the cancellation with the Insurance Commissioner pursuant to the procedures set forth in Act 68. The Insurance Commissioner rejected their challenge for two reasons: (1) the request for review was untimely; and (2) even if timely, the insurer provided the required notice. The Insurance Commissioner concluded that there was a lapse in insurance coverage of more than 31 days. In our decision, we acknowledged *Eckenrode.* Nonetheless, we concluded that the Choffs failed to rebut the statutory pre-

---

7. We did so even though, by its express terms, Section 1377(b)(2) of the Vehicle Code applies only "[i]n a proceeding relating to the suspension of the *registration of a motor vehicle* imposed under section 1786" (emphasis added) of the MVFRL, omitting any reference to a proceeding relating the suspension of an owner's operating privileges (*i.e.,* driver's license).

sumption of an "effective" cancellation, agreeing with the Insurance Commissioner's analysis of the merits. *Choff,* 861 A.2d at 448–49.

A few months later, we again discussed *Eckenrode* in *Webb,* another vehicle registration suspension case where the licensee, Scott Webb (Webb), appealed, arguing that his insurer failed to provide proper notification of policy cancellation. Like Eckenrode, Webb argued that the first time he learned that his policy was cancelled was when he received the notice of suspension from DOT. The trial court sided with Webb. It held that the insurer failed to provide Webb proper notice of the policy cancellation, rebutting any presumption of lapse created by the certified documents that the insurer transmitted to DOT. In addition, because Webb did not receive notification of the cancellation, he could not have appealed the cancellation under Act 68. *Webb,* 870 A.2d at 971.

On appeal, DOT argued that the only issue before the trial court was the suspension of his registration and that, pursuant to Section 1786(d)(5) of the MVFRL, any challenge to the validity of the cancellation had to be lodged with the Insurance Commissioner. Accordingly, DOT argued that the trial court exceeded its scope of review by examining the validity of the underlying policy cancellation. We rejected that argument for two reasons. First, relying on *Eckenrode,* we held that an insured can rebut the statutory presumption created under Section 1786(d)(4)(ii) with proof that a policy cancellation was not effective under Section 2006 of Act 68.[8] We characterized our approach in *Eckenrode* as an examination of the record "to determine, at a minimum, the facial validi-

ty of a cancellation notice" pursuant to Act 68. *Webb,* 870 A.2d at 973. Because, however, resolution of Webb's challenge required consideration of matters "beyond the record on its face," we held that the challenge properly lied before the Insurance Commissioner, as set forth in Section 1786(d)(5) of the MVFRL. Nonetheless, we held, under the narrow facts of that case, that Webb, a *pro se* litigant, should be allowed to challenge the policy cancellation with the Insurance Commissioner, perhaps even *nunc pro tunc. Id.* at 974–75. We, therefore, dismissed DOT's appeal without prejudice, in order to afford Webb an opportunity to request review of his policy cancellation with the Insurance Commissioner. *Id.* at 975.

Based on this precedent, we can summarize the current state of the law as follows. With the passage of Act 152, Section 1786(d)(5) of the MVFRL provides that the "only" method an insured may challenge an alleged policy cancellation is by requesting review of the insurer's action by the Insurance Commissioner pursuant to Act 68. A timely request for such review operates as a stay of any action by DOT to suspend a vehicle registration or operating privilege due to the alleged cancellation, pending the outcome of the proceedings before the Insurance Commissioner. Notwithstanding the foregoing, where DOT is relying on transmittal of a notice from an insurer that a policy has lapsed, has been cancelled, or has been terminated, as the basis for a suspension, this Court had held that a licensee may prevail in its statutory appeal from that suspension if the licensee can show, by clear and convincing evidence, that the licensee had no notice of the cancellation

---

8. In so holding, it appears that the Court in *Webb* expanded our decision in *Eckenrode,* which held only that proof of an insurer's violation of Section 2006 of Act 68 could rebut the presumption of an "effective" policy cancellation created by Section 1377(b)(2) of the Vehicle Code.

prior to receiving the notice of suspension from DOT and that the insurer failed to comply with Section 2006 of Act 68 by delivering or mailing the notice of cancellation to the named insured at the address as provided on the policy—*i.e.,* a facial defect. *Eckenrode; Choff.*[9]

We now turn to DOT's contention that the trial court effectively ignored the unappealed Investigative Report and allowed Licensee to wage an impermissible collateral challenge to the Investigative Report's finding that Licensee's coverage was not in effect at the time of the December 23, 2012 accident. In *Cain* and *Choff,* the Court recognized DOT's concern that statutory appeals under the MVFRL might be used to wage collateral attacks on Insurance Department determinations under Act 68. In *Cain,* however, we found that because the Cains did not seek review of their policy cancellation by the Insurance Commissioner, "there [was] nothing to attack collaterally." *Cain,* 811 A.2d at 44 n. 13. In *Choff,* we avoided the issue by agreeing with the Insurance Commissioner's determination. *Choff,* 861 A.2d at 449 n. 9.

We have reviewed the Investigative Report. The record from the trial court does not include the written request for review submitted to the Insurance Commissioner, which would inform us as to the particular issues that Licensee raised in her Act 68 review request. It is not apparent from the Investigative Report itself that the Insurance Commissioner's designee considered the issue of whether Nationwide complied with Section 2006 of Act 68 by mailing the Cancellation Notice to the address indicated on the policy. Accordingly, because there does not appear in the record to be any order or other determination by the Insurance Commissioner on this question, as in *Cain,* there is nothing to attack collaterally. For the same reason, Licensee's failure to seek a formal hearing after receiving the Investigative Report will not be held against her with respect to this discrete question.

Licensee's defense below amounted to a challenge to the "alleged" cancellation of her insurance policy. Such challenges can

---

9. We confess some inconsistency in our analyses in *Eckenrode, Choff,* and *Webb,* as well as general discomfort with the thin and fragile line of demarcation that this precedent has drawn between a challenge to a policy cancellation that *can* proceed in a statutory appeal of a suspension under the MVFRL and one that *must* proceed before the Insurance Commissioner under the procedures set forth in Act 68. Our concern is heightened because we are mindful that in Act 68 proceedings before the Insurance Commissioner, the insurer is a party. *See* Section 2009 of Act 68; *see also Webb,* 870 A.2d at 974 n. 10 (noting that in Act 68 review proceeding, insurer is party and bears burden of proving strict compliance with statutory notice provisions). Thus, the insurer, which has a direct interest in the validity of its action, has notice and an opportunity to be heard on any claim by its insured that the insurer violated Act 68. Such is not the case in statutory appeals under the Vehicle Code. The only parties to such appeals are the insured/licensee and DOT,

neither of which represents the interests of the insurer whose action is being challenged. The implication of a trial court's decision in a license suspension appeal that a policy cancellation was not effective could be far reaching. In this case, for example, Nationwide denied coverage for the accident on December 23, 2012, due to a lapse in coverage. The Insurance Commissioner, pursuant to Act 68 review, held that there was a lapse in coverage. The trial court below held that Licensee was, in fact, insured on December 23, 2012, and that there was no lapse in coverage. It did so after Licensee testified during the hearing below that she planned to bring an action against Nationwide for coverage for the accident. (R.R. 52a.) If we were to uphold the trial court's decision in this case, we would be left to wonder how its decision can, will, or should be reconciled with the Insurance Commissioner's decision under Act 68. Nonetheless, neither DOT nor Licensee requests that we reconsider and overrule our precedent. We decline to do so *sua sponte.*

only be brought before the Insurance Commissioner under Act 68. This Court, in *Eckenrode*, carved out a very narrow exception to this statutory mandate. If *Eckenrode* applies, however, we agree with DOT that the trial court erred in the manner in which it applied it. In sustaining Licensee's appeal, the trial court compared the address for Licensee on the Cancellation Notice with the address given by Licensee as her place of residence during her testimony. Section 2006 of Act 68, however, requires only that an insurer transmit the notice of cancellation to the address "shown on the policy." If the address on the notice of cancellation matches the address on the policy, under *Eckenrode*, the cancellation is valid. Accordingly, to the extent the trial court relied on *Eckenrode*, it erred by holding that Nationwide violated Section 2006 of Act 68 without reviewing the address shown on Licensee's policy.

■ To remedy this error by the trial court, DOT requests that we remand this matter to the trial court for a proper review under *Eckenrode*. We will vacate and remand, but not for *Eckenrode* review. *Eckenrode* does not apply in this case. Its efficacy, and that of its progeny, is grounded in situations where DOT attempts to establish its prima facie case for suspension on notice of a lapse in coverage that an insurer has transmitted to DOT. *See* 75 Pa.C.S. § 1377(b)(2); § 1786(d)(4)(ii). Here, DOT suspended Licensee's operating privileges because it received "information from a court by means of electronic transmission," *id.* § 1377(b)(1), evidencing Licensee's conviction, by guilty plea, of operating a motor vehicle without required financial responsibility, *id.* § 1786(f). Thus, *Eckenrode* does not apply. Notwithstanding DOT's request, we will not remand to the trial court to apply a legal

standard that plainly does not apply in this case.

Instead, we will remand to the trial court to reconsider its decision in light of this Court's *en banc* decision in *Cangemi*. Like Licensee here, Paul Cangemi (Cangemi) pled guilty to violating Section 1786(f) of the MVFRL. DOT notified him that it would be suspending his operating privileges as a result of his conviction, and Cangemi appealed. DOT satisfied its prima facie case for suspension through certified proof of Cangemi's conviction. In his appeal, however, Cangemi argued and sought to establish by evidence that he did not "permit" someone to operate his uninsured vehicle, the factual predicate of his conviction. The trial court ruled in Cangemi's favor and sustained his statutory appeal. DOT appealed to this Court, and we reversed, reasoning:

> Initially, we emphasize that Owner *pled guilty to and was convicted of* violating Section 1786(f) of the MVFRL.... Because Owner never appealed the conviction to this summary offense, and cannot challenge his guilty plea and conviction before this Court on appeal, it is problematic that his argument here on appeal is in direct contradiction to his unchallenged conviction. He was convicted for violating Section 1786(f) which required that he "permit" the vehicle to be operated without financial responsibility. This language is almost identical to the language in Section 1786(d)(1) ("the *owner or registrant has* operated or *permitted the operation of the vehicle without the required financial responsibility,*" 75 Pa.C.S. § 1786(d)(1) (emphasis added)), which Owner argues he did not violate. Both subsections use the same word "permit," which cannot have a different meaning within the same section of the MVFRL. As such, Owner cannot successfully argue that he did not "permit" the vehicle

to be operated to rebut DOT's prima facie case.

This holding is consistent with this Court's precedent in which "[w]e have held many times that the propriety of a criminal conviction may not be collaterally attacked in a civil license suspension hearing." *Department of Transportation, Bureau of Driver Licensing v. Diamond,* [151 Pa.Cmwlth. 351] 616 A.2d 1105, 1108 (1992). In *Diamond,* we explained that "DOT's records are not infallible. To blindly affirm a revocation where there is clear evidence that the motorist had been acquitted of the underlying offense would, in our view, elevate form over substance and work a manifest injustice." *Id.* at 1107. We therefore held that once DOT submits evidence of the conviction, there is a rebuttable presumption that the conviction exits; "[a]bsent clear and convincing evidence that the record is erroneous, this presumption becomes conclusive on the issue of the conviction." *Id.* at 1107–08. In *Diamond,* the licensee produced an acquittal of the offense; because the conviction was a nullity, the presumption was rebutted.... Since DOT submitted certified evidence of Owner's conviction in this case, which was not appealed, with no evidence that the record of conviction is erroneous, the presumption is conclusive on the issue of the conviction.

*Cangemi,* 8 A.3d at 398–99 (emphasis in original). *Cangemi,* not *Eckenrode,* provides the proper legal framework within which to decide Licensee's statutory appeal in this case.

### ORDER

AND NOW, this 8th day of May, 2014, the order of the Court of Common Pleas of Monroe County (trial court) is VACATED, and the matter is REMANDED to the trial court for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.